<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MILLARD LEFF, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 05-3648 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| FIRST HORIZON HOME LOAN, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon Defendant Equihome Mortgage Corporation's Motion for a New Trial, to Alter and/or Amend the Final Judgment and to Stay all Proceedings to Enforce the Final Judgment Pending Appeal without a Supersedeas Bond (hereinafter "Defendant") [Docket Entry # 161] and Plaintiff Millard Leff's (hereinafter "Plaintiff") Cross-Motion for a Costs Bond in the amount of $54,500.  For the reasons discussed below, Defendant's Motion is denied and Plaintiff's Cross-Motion is granted.

## I.    BACKGROUND

Kenneth Leff, on behalf of his father, Plaintiff, commenced this action against defendants alleging that they engaged in various predatory lending practices in connection with a mortgage transaction.  Plaintiff is approximately 80 years old and resides at 2 Demott Road, Whitehouse Station, New Jersey.  Defendant Equihome is a corporation engaged in the business of mortgage lending.  Equihome's main office is located at 131 Morristown Road, Bernardsville, New Jersey.  Equihome provided a mortgage loan, underwritten by Flagstar Bank, to Plaintiff.  The mortgage

closing occurred on April 30, 2004.

In June 2005, Kenneth Leff commenced this action in the Superior Court of New Jersey against Equihome, Flagstar Bank, First Horizon and Banctel.  In July 2005, First Horizon moved for removal of the case to the United States District Court, District of New Jersey.  From approximately December 2005 until April 2006, the parties engaged in discovery.  On May 5, 2006, Flagstar Bank, along with Plaintiff and other co-defendants, entered a voluntary dismissal pursuant to which (1) Plaintiff dismissed all claims against First Horizon and Flagstar, (2) First Horizon and Flagstar dismissed all counterclaims against Plaintiff and (3) Equihome dismissed its cross-claims against First Horizon.  On May 8, 2006, the parties entered into a second voluntary stipulation of dismissal to which all of the parties dismissed claims and cross-claims against Banctel.

On October 26, 2006, the Court granted Equihome's motion for summary judgment in part,  dismissing several claims.  The remaining claims included common law fraud (Count I), the New Jersey Consumer Fraud Act (Count V) and negligent misrepresentation (Count VI).  The Court also granted Flagstar's motion to dismiss Equihome's cross-claims against Flagstar, but denied Flagstar's  motion for summary judgment on its cross-claims against Equihome.  On May 22, 2007, a jury trial commenced before this Court on the remaining three counts.  The trial was held on May 22, 23, 24 and 30, 2007.  On May 30, 2007, the jury returned a verdict in favor of Plaintiff on its claims under the New Jersey Consumer Fraud Act and awarded compensatory

2

damages in the amount of $220,000.[1]  Plaintiff was not successful on the common law fraud and negligent misrepresentation claims, and no punitive damages were awarded.

On June 7, 2007, Plaintiff's attorney submitted an application for attorneys' fees and costs as set forth under the New Jersey Consumer Fraud Act, which was granted in part by this Court.  On July 26, 2007, Defendant Equihome submitted the instant motion.  Plaintiff submitted his opposition on August 7, 2007.

## III.   DISCUSSION

### A.     Motion to Reduce or Set Aside the Jury's Verdict

Defendant first asserts that this Court should either set aside or reduce the jury's verdict because the amount of $220,000 awarded by said jury on Plaintiff's New Jersey Consumer Fraud Act claim is unsupported by the evidence.  Specifically, Defendant argues that the $220,000 award is excessive because the jury miscalculated the actual damages suffered by Plaintiff "when they failed to account for the outstanding balance on [P]laintiff's prior mortgage that was discharged and paid in full as a result of the refinance transaction with [Defendant] Equihome." (Defendant Motion, p. 15).  Defendant asserts that because the jury failed to account for the prior mortgage, they rendered a verdict for damages greater than what Plaintiff had sustained.  Defendant further argues that a claimant under the New Jersey Consumer Fraud Act is not entitled to compensatory damages greater than those assessed to compensate ascertainable loss.

Federal Rule of Civil Procedure 59(a) establishes that "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury. . . ."  *Id.*  The district court's ability to grant a new trial "is limited to those circumstances

---

[1]  Under the NJCFA, this award was trebled by the Court, resulting in a total judgment of $660,000.

where a miscarriage of justice would result if the verdict were to stand.  The purpose of this policy is to ensure that the trial court does not supplant the jury verdict with its own." *Abrams v. Lightolier,* 841 F. Supp. 584, 592 (D.N.J. 1994).  Generally, "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." 11 CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §2803, at 32 (1973); *see also Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir. 1992), *cert. denied,* 113 S. Ct. 1285 (1993) (trial court's power to order new trial limited to instances in which "a 'miscarriage of justice would result if the verdict were to stand'" (quoting *Williamson v. Consol. Rail Corp.,* 926 F.2d 1344, 1352 (3d Cir. 1991)); *Lighting Lube, Inc. v. Witco Corp.,* 802 F. Supp. 1180, 1186 (D.N.J. 1992), *aff'd,* 4 F.3d 1153 (3d Cir. 1993) ("'[T]he following grounds have been recognized as general grounds for a new trial: the verdict is against the clear weight of the evidence; damages are excessive; the trial was unfair; and that substantial errors were made in the admission or rejection of evidence or the giving or refusal of instructions.'") (citations omitted).  In *Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002 (3d Cir.1995), the Third Circuit stated that "[t]he authority to grant a new trial resides in the exercise of sound discretion by the trial court, and will only be disturbed if the court abused that discretion."  (citing *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33,36 (1980); *American Bearing Co. v. Litton Industries, Inc.,* 729 F.2d 943 (3d Cir.), *cert. denied,* 469 U.S. 854 (1984)).

Alternatively, subjecting a verdict to a remittitur is only appropriate where the damage awards are excessive or so large as to appear contrary to reason.  *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir., 1992); *Hayes v. Cha*, 338 F.Supp.2d 470, 512 (D.N.J. 2004); *Hurley*

*v. Atlantic City Police Dept.,* 993 F.Supp. 396, 423 (D.N.J. 1996) (remittitur of a verdict is warranted where the jury verdict is clearly unsupported by the evidence and exceeds the amount needed to make the plaintiff whole). In contemplating a motion for remittitur, a court must "review a damage award to determine if it is rationally based" and issue a remittitur "where it is not." *Williams v. Martin Marietta*, 817 F.2d 1030, 1038 (3d Cir. 1987); *Hayes* at 512.

Additionally, the New Jersey's Consumer Fraud Act (hereinafter "CFA"), New Jersey Statute Ann. 56:8-1, et seq., provides, in relevant part, the following: "Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . may bring an action . . . in any court of competent jurisdiction." *See* N.J.Stat.Ann. 56:8-19. As such, the only prerequisite for maintenance of a private action to remedy a violation of the Consumer Fraud Act is that a plaintiff must present a claim of ascertainable loss. *Laufer v. U.S. Life Ins. Co. in City of New York*, 385 N.J.Super. 172, 896 A.2d 1101, 1110 (2006).

The CFA does not define what constitutes an "ascertainable loss," and there is no legislative history "that sheds direct light on those words." *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 872 A.2d 783, 792 (2005). The New Jersey Supreme Court has determined that "to give effect to the legislative language describing the requisite loss for private standing under the CFA . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." *Id.* "The certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measurable," and in order to raise a genuine dispute, "the plaintiff must proffer evidence of loss that is not hypothetical or illusory." *Id.*

The New Jersey Supreme Court has also determined three main purposes of the CFA,

5

which are: (1) to *punish* the wrongdoer through the award of *treble damages*; (2) by way of the counsel fee provision, to attract competent counsel to counteract the community scourge of fraud by providing an incentive for an attorney to take a case involving a minor loss to the individual; and (3) to compensate victims for *actual* losses. *Wanetick v. Gateway Mitsubishi*, 163 N.J. 484, 490 (2000) (emphasis added). As such, the treble damages award provides a substantial punitive component which permissively compensates beyond the amount of actual harm. *Lauchheimer v. Gulf Oil*, 6 F.Supp.2d 339, 348 (D.N.J. 1998) (citing to *Neveroski v. Blair*, 141 N.J.Super. 365, 358 A.2d 473, 482 (App.Div. 1976) (overruled on other grounds); *Corry v. Intel Corp.*, 1996 WL 338381 (D.N.J. 1996) (unreported) (acknowledging that under the New Jersey Consumer Fraud Act, compensatory damages are trebled, and that the cost of actual loss for microprocessors would be computed to "three times the purchase price").

In the present case, the jury was presented with evidence that showed that Plaintiff lost $223,000 of equity in his home due to Defendant's actions. During deliberation, the jury sent a question to this Court, asking whether or not the jury or the Court trebles the damages. The jury was informed that the Court would treble the damages. Soon thereafter, the jury returned a verdict, awarding $220,000 in compensatory damages to Plaintiff, being fully aware that the Court would treble the amount. The Court concurs with Plaintiff's assessment of the verdict that the jury was clearly seeking to compensate Plaintiff so that he could pay off the mortgage and keep his home. The jury was aware that the amount was to be trebled, and clearly wished that Plaintiff receive additional compensation beyond what was needed to save Plaintiff's house. Because the CFA seeks to punish violators by trebling the amount of ascertainable loss, there is

6

no violation of law in Plaintiff obtaining compensation beyond the amount of ascertainable loss.[2]

Further, and in consideration of Defendant's Motion pursuant to Rule 59(a) and remittitur of damages, the Court finds nothing excessive about the verdict. It is a logical calculation, well thought out by the jury, which resulted from careful review of the evidence before them. The amount does not shock the conscience, nor does it exceed the boundaries of reason, and courts will not disturb what truly is the primary function of the jury without a clear miscarriage of justice. As such, this Court will not overturn or alter in any way the amount awarded by the jury.

**B.      The Admission of the Recorded Telephone Conversation**

Defendant next contends that this Court erred in its ruling regarding Defendant's previous in limine motion when this Court determined that the recorded telephone conversation between Jeffrey Bergida and Kenneth Leff was admissible. Defendant asserts that the intent of the Florida Security of Communications Act was overlooked as said Act exists to protect individuals from being subjected to unauthorized wiretaps. Defendant further asserts that Kenneth Leff's invocation of his Fifth Amendment rights in refusing to answer questions concerning the tape recordings provided this Court with another basis to rule that the recordings were inadmissible. Finally, Defendant argues that the recordings would remain inadmissible even if New Jersey law were to apply to the recordings.

After reviewing Defendant's instant motion, the Court can find no new information or recent determination in law that would necessitate a ruling different than that which was issued in response to Defendant's prior in limine motion. For the purpose of completeness and

---

[2] This also negates Defendant's argument that the ascertainable loss was less than $220,000.

appellate review, the Court will restate its prior ruling.  Specifically, this Court previously found that "to establish a claim under the [Florida] Wiretap Statute, the persons bringing suit must be Florida residents or the improper 'interception' must have occurred in Florida."  *Cohen Bros., L.L.C. v. ME Corp., S.A.*, 872 So. 2d 321, 324 (Fla. 3rd DCA 2004).  "The law is clear that an 'interception' occurs 'where the words or the communication is uttered, not where it is recorded or heard.'"  *Id.* (quoting *Koch v. Kimball*, 710 So. 2d 5, 7 (Fla. 2d DCA 1998)).  "'Intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  § 934.02(3), Fla. Stat. Ann.  *See also State v. Tsavaris*, 394 So. 2d 418, 421 (Fla. 1981), receded from on other grounds by *Dean v. State*, 478 So. 2d 38, 41 (Fla. 1985) ("'[T]o intercept' means to gain control or possession of a communication through the sense of hearing and through the use of an electronic or mechanical device.").

In the case at hand, the party asserting the claim pursuant to the Florida Wiretap Statute is not a Florida resident, rather, Defendant's main office is located in Bernardsville, New Jersey. The utterances made by Mr. Bergida on behalf of Defendant were made in New Jersey. Defendant confirms that Mr. Bergida was in the Bernardsville, New Jersey office or was traveling within the state of New Jersey during these conversations.  Accordingly, since Florida law considers an interception to occur where the words or communications are uttered and not where they are recorded or heard, the words spoken by Mr. Bergida are considered to be intercepted in New Jersey.  Accordingly, Florida law does not apply in this case, and Defendant's assertion that the Court failed to consider the intent of the Florida Wiretap statute is moot.

As Defendant asserts that the intercepted conversations should have been deemed inadmissible either under Florida law or New Jersey law, the Court will now re-review New Jersey law.

According to § 2A:156A-4(d), it shall not be unlawful under the New Jersey Wiretapping and Electronic Surveillance Control Act for:

> [a] person not acting under color of law to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception unless such communication is intercepted or used for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act.

"Intercept" means "the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical, or other device." N.J. Stat. Ann. § 2A:156A-2.  Thus, "a party to a telephone conversation who records that communication is deemed to 'intercept' it under the New Jersey Wiretapping Act." *State v. Lane*, 279 N.J. Super. 209, 218 (App. Div. 1995) (citing *State v. Minter*, 116 N.J. 269, 275(1989)).

In *State v. Worthy*, 141 N.J. 368, 379 (1995), the Court found that "there can be no doubt that the legislative concern for privacy embraces the privacy interest that a resident in New Jersey has in telephone conversations that originate from an out-of-state telephone." *Minter*, 116 N.J. at 276.  The Court determined that there was not an "impermissible or extra-territorial extension of the statute [Wiretap Control Act] because the telephone calls, though originating from an out-of-state telephone, involved conversations with a person in New Jersey." *Worthy*, 141 N.J. at 379.

Therefore, the correct application of the Wiretap Control Act proscribes the taping of telephone conversations of others, without consent, when the interceptor is not a party to the conversation.  N.J. Stat. Ann. § 2A:156A-2, -3. "Explicitly excepted from these proscriptions are telephone conversations intercepted with the consent of either party to the conversation." D'Onofrio v. D'Onofrio, 344 N.J. Super. 147, 154 (App. Div. 2001); N.J. Stat. Ann. § 2A:156A-4(d).  "Thus, the taping of one's own telephone conversations with another, while an 'intercept' within the meaning of both statutes . . . is a violation of neither."  D'Onofrio, 344 N.J. Super. at 154 (internal citations omitted); N.J. Stat. Ann. § 2A:156A-2(c); Worthy, 273 N.J. Super. at 150-51.

In this case, Mr. Leff was in Florida when he initiated the call to Mr. Bergida, who was in New Jersey during each of the communications.  Mr. Leff was a party to the call, and thus there was consent by one party to the recording of the conversation.  Mr. Leff's status as an out-of-state caller does not prevent the New Jersey Wiretap Control Act from applying here, as New Jersey courts have recognized the importance of the privacy interests of New Jersey residents when confronted with out-of-state calls.  Accordingly, because Mr. Leff, as a party to the conversations, was not acting under the color of law when he initiated the telephone call to Mr. Bergida and the communication was not used for the purpose of committing any criminal or tortious act, there was no basis for the suppression of the recordings.  Further, Defendant's assertion that Mr. Bergida did not know or consent to having his conversation recorded is moot as his consent is not needed under New Jersey law.  In consideration of the above, Defendant's motion in this regard is denied.

10

**C.      Continuance to Permit Millard Leff to Testify in Person at Trial**

Defendant next argues that this Court should have continued the trial until Millard Leff's health had improved.  Defendant asserts that evidence was provided to the Court showing that Millard Leff would have been well enough to testify in person within two to three weeks from the date of his medical examination.  Defendant argues that although the parties would not have been prejudiced by such a brief adjournment, Defendant was significantly prejudiced by their inability to cross-examine Millard Leff at trial.

It has long been established that the deposition of a witness is admissible "if the court finds . . .that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment[.]" *See* F.R.Civ.P. 32(a)(3)(C); *Crossley v. Lieberman*, 868 F.2d 566, 568-69 (3d Cir. 1989) (holding that 68 year old plaintiff too sick to appear in court; rejected similar argument that defense was denied opportunity to cross-examine by finding that the probative value of the deposition outweighed any prejudice to the defendant).  It is clear that Millard Leff was unable to attend.  This two year old case was set for trial during a very busy trial calendar.  Based upon the information presented, the Court declined to continue the trial for several weeks in the hope that Millard Leff, who was admittedly ill, might become well enough to attend.

Here, Defendant was well aware of Millard Leff's deteriorated health.  In preparation for Millard Leff's possible unavailability due to ill health, Plaintiff's counsel prepared and conducted a videotape deposition in December of 2005 on notice to Defendant.  Defendant declined to participate or even attend.  As Plaintiff points out in his opposition to Defendant's motion, the Court's Pretrial Order issued five months prior to trial stated that "Plaintiff may be physically unable to attend trial.  If so, Plaintiff's videotaped deposition testimony will be presented to the

jury." *Id.* Despite the Court's and Plaintiff's preparation for Millard Leff's possible absence at trial, Defendant failed to conduct a videotaped *de benne esse* trial deposition.

Because Defendant failed to attempt to prepare for this possibility, and because the jury could witness Millard Leff and what and how he responded to relevant questions, Defendant was not subjected to undue prejudice. Defendant's motion in this regard is denied.

### D.     Unsecured Stay Pending Appeal

Defendant asks this Court to issue an unsecured stay of all proceedings seeking to enforce the Final Judgment pending appeal.

F.R.Civ.P. 62(d) allows a stay of the execution of a judgment if a supersedeas bond is issued. The bond is designed to protect the prevailing plaintiff during the appellate process and compensates said plaintiff for the delay in entering the Final Judgment pending appeal. *Herbert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992).

To waive the requirement of the bond, the party seeking such waiver must generally demonstrate that the posting of a full bond is impossible or impractical. *U.S. v. Kurtz*, 528 F.Supp. 1113, 1115 (E.D.Pa. 1981). In consideration of whether to waive the posting of the bond, a court must consider several factors which include: (1) the complexity of collection; (2) the estimated length of delay; (3) the availability and sufficiency of the funds of the owing party; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether owing party is in a precarious financial situation so that requirement of a bond would place other creditors of the defendant in an insecure position. *Hurley v. Atlantic City Police Dept.*, 944 F.Supp. 371, 374 (D.N.J. 1996).

In the instant motion, Defendant asserts that they are in a "thriving business of providing mortgage-lending services to individuals and corporations throughout the United States . . ." (Def. Motion, p. 46).  If so, the posting of a bond should present no great difficulty.  However, the Court cannot find, based upon this unsupported statement that Defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money, especially considering the reported issues facing the mortgage industry.

Even if Defendant is financially secure now, there is nothing to suggest that will not be affected by volatility in the housing and mortgage industry.  Plaintiff has successfully navigated his suit to a Final Judgment.  Although appellate review remains, he has earned the right to be secure in that judgment.  A supersedeas bond is therefore appropriate.

### E.     Plaintiff's Request for a Costs Bond

Plaintiff seeks to have a costs bond issued in addition to a supersedeas bond pursuant to Federal Rule of Appellate Procedure 7 to ensure payment of costs and fees that arise after entry of judgment while an appeal is taken.  Rule 7 states, in pertinent part: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."

For the reasons stated above, Plaintiff's request for a costs bond in the amount of $54,500, covering post judgment interest, attorneys' fees and appellate costs is granted.

13

**III.     CONCLUSION**

    For the foregoing reasons, Defendant's Motion for a New Trial, to Alter and/or Amend the Final Judgment and to Stay all Proceedings to Enforce the Final Judgment Pending Appeal without a Supersedeas Bond is denied.  Plaintiff's cross-motion for a costs bond in the amount of $54,500 is granted.

Dated: August 31, 2007

                                               s/Garrett E. Brown, Jr.
                                             GARRETT E. BROWN, JR., U.S.D.J.